NO. 07-03-0535-CR


 NO. 07-03-0536-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 6, 2005


______________________________



JAMES POYNER, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;



NOS. 99-464,012 and 2000-468,536; HON. LARRY B. "RUSTY" LADD, PRESIDING


________________________________



Memorandum Opinion


________________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Appellant, James Poyner, appeals from two orders revoking his community
supervision granted in two separate prosecutions. He had originally been convicted for
driving while intoxicated in each case. His sole issue on appeal involves the sufficiency of
the evidence establishing that he violated a condition of his probation. We affirm the orders
of the trial court. 

 To remain on community supervision, appellant had to forego engaging in criminal
conduct, among other things. Believing that he violated that condition by again driving a
motor vehicle while drunk, the State moved to revoke his community supervision. 
Furthermore, the violation occurred when he left the scene of a house fire after drinking six
to seven beers. The house in question was his own. Furthermore, according to appellant,
he left at the direction of Miguel Castillo, one of the firefighters. Having acted pursuant to
the directive of a firefighter, appellant claimed below and here that his conduct was
somehow authorized. (1) And, being authorized, it did not constitute a criminal act.

 At the revocation hearing, Castillo testified that he 1) "told [appellant] that if he would
like to . . . if he didn't have a place to stay that he could stay at my house and that way he
could take the kids over to my house", 2) "asked [appellant] to go to my house," 3) was not
commanding him "as a law enforcement agent" to go to his house, and 4) was doing
appellant a favor "[s]omewhat as a friend . . . ." (Emphasis added). Assuming arguendo
that one can assert a claim of justification in a revocation proceeding, see Tex. Pen. Code
Ann. §9.21(d) (Vernon 2003) (stating that the "justification afforded by this section is
available if the actor reasonably believes . . . his conduct is required or authorized to assist
a public servant in the performance of his official duty . . . ."), Castillo's testimony could
reasonably be interpreted as less than mandatory. Indeed, words such as "asked" and "if
you would like to" fall short of requiring action, or so a factfinder could have legitimately
concluded. At the very least, they and the context in which they were uttered create a fact
question regarding whether Castillo stripped appellant of his free will. And, as the
factfinder, the trial court was free to interpret them and their context in the manner it
selected. See Taylor v. State, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980) (stating that
at a revocation hearing, the trial court is the trier of fact and the sole judge of the credibility
of the witnesses and the weight to be accorded the evidence). So, given the tenor of the
words uttered by Castillo, the trial court had reasonable basis to conclude that appellant's
decision to operate his truck while intoxicated was quite voluntary on his part.

 We overrule appellant's only issue and affirm the orders of revocation. 


 Brian Quinn 

 Chief Justice 

Do not publish. 


1. We note that appellant does not question whether he was intoxicated while he drove his vehicle. 
Rather, he simply says that his actions were involuntary because he was following the orders of a firefighter,
and to ignore them would be criminal in and of itself. See Tex. Pen. Code Ann. §38.15(a)(3) (Vernon 2003)
(stating that a person commits an offense if with criminal negligence he interrupts, disrupts, impedes, or
otherwise interferes with a firefighter while the firefighter is fighting a fire or investigating the cause of a fire). 
Thus, there is no need for this court to determine whether sufficient evidence illustrates that 1) he was
intoxicated at the time or 2) he operated a motor vehicle while intoxicated. Again, those issues are
undisputed. 

 Cato almost always puts an "inducement clause" in its lease
agreements;

 Stein Mart, Hobby Lobby, and T.J. Maxx were "inducement tenants"
under lease paragraph 26;

 the purpose of "inducement tenants" is to ensure a certain quantity
and type of customer traffic at a shopping center for smaller tenants
such as Cato; 

  inducement tenants are always retail establishments; and

 both Mardel Christian Book Store and Hobby Lobby are retail stores
selling goods to the public. 


 

 

Neither party challenges the above findings of the trial court. Regarding the charge of the
court, question one asked and instructed the jury:

 Do you find from a preponderance of the evidence that Mardel Christian
Book Store operates a similar type business as Hobby Lobby Craft Supply
Store? 

 Answer "We Do" or "We Do Not"

 If you have answered "We Do" to Question 1, then answer Questions 2 and
3. If you have answered "We Do Not," then answer Question 4.


After answering the question "We Do Not" as instructed, the jury answered question 4
denying Cato any recovery for attorney's fees.

 The trial court also submitted eight special instructions in its charge. Instruction 2
instructed the jury that:

 2. You will answer "We Do" or "We Do Not" to all questions unless otherwise
instructed. A "We Do" answer must be based on a preponderance of the
evidence. If you do not find that a preponderance of the evidence supports
a "We Do" answer, then answer "We Do Not." Whenever a question requires
an answer other than a "We Do" or "We Do Not", your answer must be based
on a preponderance of the evidence. The burden to establish a
preponderance of the evidence is on the Plaintiff.


Instructions 3 and 4 were as follows:


 3. A fact may be established by direct evidence or by circumstantial
evidence or both. A fact is established by direct evidence when proved by
documentary evidence or by witnesses who saw the act done or heard the
word spoken. A fact is established by circumstantial evidence when it may
be fairly and reasonably inferred from other facts proved.

 4. You will not take into consideration nor discuss any matter not produced
in evidence before you, other than matters of common knowledge.


The charge did not define the term ""similar type business" and Hartford does not assign
any error to the charge or the instructions. Following rendition of the judgment, Hartford
presented a motion for judgment notwithstanding the verdict and a motion for new trial
which was overruled by operation of law. 

 By its first issue, Hartford contends the trial court erred in overruling its objection to
questions by Cato's counsel to a witness regarding prospective jurors' responses to
questions on voir dire. We disagree. During voir dire, counsel for Cato asked the
prospective jurors several questions regarding whether they had shopped at Hobby Lobby
or Mardel. Then, on direct examination of Cato's representative, counsel asked the
witness how many female panel members indicated that they shopped at Hobby Lobby and
Mardel's. Then, as counsel for Cato continued

 Q. Do you remember when I asked -


 Mr. Golman: Your Honor, I object to the relevance of this line
of questioning.


 The Court: Overruled.


 Q. Do you remember when I asked the question how many women panel
members shopped at Hobby Lobby? 


 Q. If I told you that twelve females raised their hands, would that be correct."


 A. I noticed that also.


Then, without any additional objection, the examination concluded: 


 Q. And if I told you that five women raised their hand to that question, would
that be correct?


 A. That is correct. I saw more women raise their hands when you asked
about the Hobby Lobby, and not nearly as many women raised their hand
when asked about Mardel. It was-it was interesting.


 In order to preserve its complaint for appellate review, Hartford was required to
present a timely objection to the trial court stating the specific grounds for the objection. 
Tex. R. App. P. 33.1(a). Moreover, a party cannot raise an objection to evidence for the
first time on appeal which was not presented to the trial court. Prati v. New Prime, Inc.,
949 S.W.2d 552, 554 (Tex.App.--Amarillo 1997, pet. denied). Although Hartford's
objection was directed to the "relevance of the line of questioning," on appeal Hartford
does not present its relevance objection, but instead argues that the examination was
prohibited by Rule 606 of the Texas Rules of Evidence, and that Texas law does not permit
a verdict to be rendered on the personal experiences of members of the jury. Because
these issues were not presented to the trial court, we cannot consider them for the first
time on appeal. Id. Issue one is overruled.

 By its second issue, Hartford questions whether there was "legally sufficient
evidence, or alternatively factually insufficient evidence, to support the jury's finding that
Mardel and Hobby Lobby do not operate similar businesses." We disagree. Before we
commence our review of the evidence, we must first determine the appropriate legal
challenge because the charge of the trial court placed the burden of proof on Hartford, and
instructed the jury to find "We Do Not" if Hartford did not satisfy its burden. The
appropriate challenge to a jury finding on a question upon which the complaining party
does not have the burden of proof is either an insufficient evidence point or a no evidence
point. But where, as here, Hartford had the burden of proof, the appropriate challenge is
either a great weight and preponderance point or a matter of law point. Raw Hide Oil &
Gas v. Maxus, 766 S.W.2d 264, 275-76 (Tex.App.--Amarillo 1988, writ denied). Because
Hartford had the burden of proof on the question, we will consider the inappropriately
designed point by first determining whether the jury finding was inappropriate as a matter
of law or whether such finding is against the great weight and preponderance of the
evidence, in accordance with the standard of review we applied in Raw Hide Oil.

 We commence our review of the evidence by considering the relevant documentary
evidence. Under paragraph 11 of the lease, Cato's use of its space was limited to the retail
sale of ladies' and girls' apparel, accessories, and allied lines. In addition, by paragraph
28, Hartford agreed that if it leased space to any national or regional women's apparel
chain specializing in large sized women's apparel then the fixed monthly rental of Cato
would be reduced by one half. Finally, paragraph 25 prohibited future leases of space for
a pet shop, game room, disco, night club, amusement arcade, theatre, health spa, bowling
alley, or any other non-retail operation or a store featuring sexually explicit materials or
products, or drug paraphernalia. These three provisions demonstrate that the parties
placed considerable significance on the types of businesses which would be allowed to
lease space and indicate that Cato and Hartford were very concerned about the types of
businesses to be operated by the neighboring tenants. Also, the letter of T.J. Maxx, an
inducement tenant, to Hartford dated September 22, 1998, indicated its opinion that 
Mardel would not be an acceptable inducement tenant in lieu of Hobby Lobby. Considering
this documentary evidence and the instruction of the trial court to the jury that they could
consider direct as well as circumstantial evidence and matters of common knowledge, the
matter of law point is overruled.

 Next, in reviewing the great weight and preponderance point, we examine the entire
record to determine if there is some evidence to support the finding, and then determine
whether, in light of the entire record, the finding is manifestly unjust. Traylor v. Gouldling,
497 S.W.2d 944, 945 (Tex. 1973); Raw Hide Oil, 766 S.W.2d at 276. Initially, we focus on
the court's charge to the jury because it did not define the terms "common knowledge" or
"similar type of business." We also note the findings of the trial court which are
unchallenged that (1) Stein Mart, Hobby Lobby, and T. J. Maxx were "inducement" tenants;
(2) the purpose of an inducement tenant is to ensure a certain quality and type of customer
traffic at a shopping center for smaller tenants such as Cato; (3) inducement tenants are
always retail establishments; and (4) both Mardel Christian Book Store and Hobby Lobby
are retail stores selling goods to the public. 

 The representative for Hartford testified that he based his opinion that Mardel
operated a similar type of business as Hobby Lobby on the fact that both stores sell goods
to the public at retail and that some of the merchandise in both stores is similar; however,
according to the letter from the T.J. Maxx representative, Mardel sells religious
merchandise, but we note that as its name implies, Hobby Lobby is a craft supply store.
The Hartford representative also testified that a restaurant or a stock broker would not be
similar to Hobby Lobby. Cato's representative described Hobby Lobby as a well known
retailer with close to a billion dollars in sales each year that operates 247 stores and that 
61 of its stores are located in Texas. In contrast, he testified that Mardel was only a 16-store chain and that he preferred to have Hobby Lobby as an inducement tenant. Applying
the appropriate standard of review, we conclude there is some evidence to support the
finding and in light of the entire record, the finding of the jury that for purposes of the
provisions of the lease, Mardel Christian Book Store does not operate a similar type
business as Hobby Lobby Craft Supply Store. Hartford's second issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.